UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARIA PERREAULT, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 14-10265-LTS |
| PROFESSIONAL TRANSIT MANAGEMENT OF ATTLEBORO, INC. et al., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

ORDER ON AMALGAMATED TRANSIT
UNION, LOCAL 1547'S MOTION TO DISMISS

October 6, 2014

Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for a labor organization – (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of . . . sex." 42 U.S.C. § 2000e-2(c). The plaintiff here sues her union, Amalgamated Transit Union, Local 1547 ("the Union"), under Title VII, claiming it is liable for the harassing conduct of the Union vice president that occurred in the course of the plaintiff's and the vice president's employment with Professional Transit Management of Attleboro.

The plaintiff suggests two connections linking the harassment to the Union so as to create Title VII liability. First, and primarily, that by virtue of the harasser's status as an officer and the second highest ranking official with the Union, the law renders the Union strictly liable for his unlawful conduct. Second, the plaintiff points out that when she filed an unrelated grievance, the

vice president discouraged her from doing so and thereafter commenced his harassing conduct. The plaintiff argues that, as a practical matter, employers are loath to discipline high ranking union officials such as the vice president, a hesitancy the plaintiff alleges occurred in this case. Whatever the policy merits for making a union liable for employment-related (as opposed to union-related) conduct of its officials toward its members, the Motion to Dismiss filed by the Union presents a question of statutory interpretation.

In interpreting a statute, the Court looks first to the plain and ordinary meaning of the language. Levin v. United States, 133 S. Ct. 1224, 1231 (2013) (quoting Moskal v. United States, 498 U.S. 103, 108 (1990)). Here, the language of the statute imposes liability on a union for discrimination arising in the course of union activity such as membership decisions, referrals for employment, and classifications of members. See 42 U.S.C. § 2000e-2(c). Courts have interpreted the "otherwise to discriminate" language to create union liability where the discriminatory conduct occurs in a union's representational or employment capacity or is committed by union officials in a union-controlled environment. See EEOC v. Pipefitters Ass'n Local Union 597, 334 F.3d 656, 659 (7th Cir. 2003); see also Casamento v. Mass. Bay Transp. Auth., 550 F.3d 163, 165 (1st Cir. 2008) (per curiam) (noting that "[a] union will be found to have violated Title VII when 'it deliberately declines to pursue a member's claim because of the member's gender.'" (quotation omitted)); Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73, 84-85 (1st Cir. 2007) (affirming a jury verdict finding union Title VII liability for discrimination that occurred on union-sponsored bus trip by union members who were under the supervision of a union official). For example, in Dowd v. United Steelworkers of America, Local No. 286, the Eighth Circuit affirmed a jury verdict against a union arising out of racial harassment directed at Dowd that started when he crossed a union picket line and continued at the workplace for several

weeks after the strike. 253 F.3d 1093, 1096-98 (8th Cir. 2001). The conduct there fell within the "otherwise to discriminate" language because it arose during and as a part of union activity (a picket line), was committed by union officials (a union steward), witnessed by other union officials, and endorsed by the president of the union in the form of his own racist assessment of Dowd. Id. at 1102-03.

Here, the plaintiff's Complaint fails to make sufficient plausible allegations, even drawing all reasonable factual inferences in her favor, as the Court does.[1] The harassing activity occurred during the course of employment unrelated to any union activity. Simply put, the union is not strictly liable for all actions of its officials when those officials are not acting in their official capacity. See Pipefitters, 334 F.3d at 659-60 (examining the capacity in which a union steward was acting when the harassment occurred).

The additional facts concerning the grievance the plaintiff filed also fail to support the claim. The plaintiff argues that the harassment started shortly after she filed her grievance, and that the nexus of the alleged discrimination to her action enforcing her rights under the collective bargaining agreement is sufficient to impose liability on the Union. The Complaint, however, does not plead a Title VII retaliation claim, nor does it contain plausible allegations connecting the harassment to the harasser's official capacity in the Union as distinguished from his role as a fellow employee. Without such a nexus, the Complaint lacks plausible allegations sufficient to state a Title VII claim against the Union.[2]

---

[1] The Complaint might plausibly allege that the vice president may have sabotaged the plaintiff's unrelated grievance on the basis of her sex. While this would state a claim under Title VII, see Casamento, 550 F.3d at 165, the plaintiff, during argument of this Motion, stated that she would decline to proceed in this action if such a theory were the only viable claim remaining against the Union. Accordingly, the Court puts this theory aside and addresses the other theories of Title VII liability proposed by the plaintiff.

[2] The plaintiff, while arguing this Motion, stated that her state law claim under Mass. Gen. Laws ch. 151B was supernumerary and declined to counter the several arguments made for dismissal of that claim. Thus, the Court has only considered the Title VII claim.

For these reasons, the Union's Motion to Dismiss, Doc. No. 19, is ALLOWED, and this action is hereby DISMISSED.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge